FILED
2017 Jan-09  PM 04:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

MARCUS GEOWARD WOODS,       )
                            )
        Plaintiff,          )
                            )
    vs.                     )
                            )        7:16-cv-00299-LSC
UNITED STATES OF AMERICA,   )
                            )
        Defendant.          )
                            )
                            )

MEMORANDUM OF OPINION

Before the Court is the United States of America's ("USA") Motion to Dismiss or in the Alternative, for Summary Judgment (Doc. 19). On February 22, 2016, Plaintiff Marcus Geoward Woods ("Woods") filed suit against the Birmingham VA Hospital ("the VA"), Dr. Mulcahy, and Dr. Terry (collectively "the doctors") for medical malpractice based on injuries he allegedly suffered during a surgical procedure at the VA. All claims against the VA were dismissed on August 8, 2016, and USA was added as a defendant on August 12, 2016. On October 26, 2016, USA was substituted as a party for Dr. Mulcahy and Dr. Terry pursuant to 28 U.S.C. § 2679(d)(2). USA filed a Motion to Dismiss, or in the Alternative, for

Summary Judgment on August 19, 2016. Because both parties have submitted matters outside the pleadings in support of their briefs, the Court will treat this Motion to Dismiss as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(e) & 56. For the reasons stated below, USA's motion for summary judgment is due to be granted.

## I.   BACKGROUND

Woods is a veteran who sought medical services at the VA to treat an existing gunshot wound. (Doc. 1-1 at 14.) On November 3, 2011, he received surgery to insert an inflatable penile prosthesis ("IPP"), which led to severe pain. (Doc. 1-2 at 33.) The IPP was then replaced on April 13, 2012 with a malleable rod implant, which led to complications including swelling, fever, and pain. (Doc. 1-2 at 33.) Due to the malfunction of the implant, on December 14, 2012, Woods had another surgery at the VA.

According to Woods, the doctors "change[d] the original procedure of surgery without [his] knowledge or consent" and "did not provide the proper treatment for [his] recovery." (Doc. 1 at 2.) He provides testimony from Abreyanna Maxtion ("Maxtion"), who attended a pre-operative appointment at the VA with him, during which Dr. Tann ("Tann") explained the procedure. (Doc. 1-1.) Maxtion professes that at this

meeting, Tann understood and confirmed that Woods did not want—and would not get—another IPP because the previous one had given him trouble. (*Id.* at 2.) Instead, Maxtion avers, Tann stated that the surgery would repair the harm from the previous IPP and insert a semi-rigid penile prosthesis. (*Id.*)

However, an addendum to a Nurse Intraoperative Report states that the surgery was changed "from left corporal body reconstruction with graft to insertion of [IPP]," and Woods provides a copy of the consent form for his surgery, which also lists the procedure as "left corporal body reconstruction." (*Id.* at 6 & 9.)   Woods maintains that he was not "properly monitored" or given any medications for pain or infection after this surgery. (Doc. 1 at 5.) Instead, he recounts that "they just let [him] lie there and bleed," despite the fact that he "ask[ed] for the doctors several times," and that he "could barely get a nurse to bring towels and sheets for the blood." (*Id.*) Maxtion claims that she "changed his towels as they become soaked with blood" as he bled profusely, and that the nurses did not. (Doc. 1-1 at 3.) She further professes that "[n]othing was done to stop the bleeding" before he was discharged from the hospital. (*Id.*)

Woods advances that the doctors told him that he was bleeding because his "urethra tube was cut" because they changed the procedure. (Doc. 1 at 5.) However, he does admit that he was given pain medications and antibiotics when he was sent home from the VA—purportedly still "bleeding uncontrollably." (*Id.*) Further, the Surgical Information report that Woods provides states that Woods was administered antibiotics through irrigation on December 14, 2012. (Doc. 1-1 at 20.)

Woods charges that his pain and suffering from this surgery was "beyond disregard of human life," that he contracted E. coli during the surgery, and that he had to undergo three other operations to correct the damage it caused. (Doc. 1 at 5.) One of these surgeries occurred on December 26, 2012, when he was admitted to UAB Hospital with "fever, chills, increasing scrotal tenderness and bleeding" and physicians conducted emergency surgery to remove his IPP, which was infected with E. coli. (Doc. 1-1 at 22-23.) According to Woods, when he was admitted to UAB on December 26, he was still bleeding from the December 14 surgery. (Doc. 1 at 5.) The record demonstrates another surgery was performed on November 18, 2013, in order to insert a semi-rigid prosthesis. (Doc. 1-2 at 21.) However, per the record, this surgery was

conducted in order to treat erectile dysfunction ("ED") and not to repair any damage from previous surgery. (Doc. 1-2 at 23.)

Woods also avers that despite multiple requests, he was unable to obtain his consent form for the original surgery because the VA and one of its representatives named Ronald Crook ("Crook") withheld it from him. (Doc. 24.) He further asserts that Crook convinced his attorney to drop the case because it "would take [$]20,000 to take this case to district court," and that the VA is continuing to send him bills and charge him for the December 14 surgery. (*Id.*) Woods filed an administrative claim with the Department of Veteran Affairs ("DVA") based on this surgery on January 4, 2013. (Doc. 19 at 24.) In this claim, Woods alleged that the doctors had performed a procedure he had not consented to. (*Id.*) This claim was denied by a letter dated July 11, 2013, which stated that Woods could either institute a tort action with the district court within six months of that date or within those same six months, file a request for reconsideration with the DVA. (*Id.* at 28.) Woods filed a request for reconsideration by a letter from his attorney dated December 10, 2013. (*Id.* at 32.) DVA once again denied this request, asserting that Woods could choose to file a suit in the district court within six months of

August 27, 2014. (*Id.* at 35.) Woods subsequently filed this lawsuit on February 22, 2016, alleging negligence by the doctors and the VA.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a "genuine dispute" as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The trial judge should not weigh the evidence but must simply determine whether there are any genuine issues that should be resolved at trial. *Id.* at 249.

In considering a motion for summary judgment, trial courts must give deference to the nonmoving party by "considering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (citations omitted). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there

is no evidence to prove a fact necessary to the nonmoving party's case." *Id.* Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## III.   DISCUSSION

The Federal Tort Claims Act ("FTCA") gives United States district courts "exclusive jurisdiction over claims for damages against the United States arising from personal injury 'caused by the negligence or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'" *Swafford v. United States*, 839 F.3d 1365, 1369 (11th Cir. 2016) (quoting 28 U.S.C. § 1346(b)(1)). It functions as a "limited waiver of the United States' sovereign immunity," and also sets up a requirement that "the claimant file[] an 'administrative claim with the appropriate agency' . . . within two years from the time the claim accrues." *Dalrymple v. United States*, 460 F.3d 1318, 1324 (11th Cir. 2006) (quoting *Suarez v. United States*, 22 F.3d 1064, 1065 (11th Cir. 1994). A prospective plaintiff must then file the action against the United States "within six months after the date of

mailing . . . of notice of final denial of the claim by the agency," or the claim "shall be forever barred." 28 U.S.C. § 2401.

Here, the charged negligence occurred on December 14, 2012, and Woods filed an administrative claim with the DVA on January 4, 2013, well within the two-year statutory deadline. However, the DVA sent Woods a final denial of the claim on August 27, 2014, but he did not file this action in federal district court until February 22, 2016, almost eighteen months after the denial letter was mailed. The untimeliness of this suit, however, does not strip this court of jurisdiction over the action. *See United States v. Kwain Fun Wong*, _ U.S. _, 135 S. Ct. 1625, 1628 (2015) (§ 2401(b) is "a mere claims-processing rule" and is not jurisdictional, and therefore, the limitations period may be tolled "when circumstances warrant.").

The Court interprets Woods's Motion to Stay as an argument that the statute of limitations should be tolled because of "concealment of evid[e]nce by the VA hospital and intentional misrepresentation of VA rep Ronald Cook." (Doc. 24 at 1). Woods cites to Alabama law which tolls actions when "the cause of action . . . could not reasonably have been discovered within such period." Ala. Code § 6-5-482. However, state tolling provisions are not applicable to § 2401(b) because "the accrual of

a cause of action under section 2401(b) is a matter of federal law."
*Phillips v. United States*, 260 F.3d 1316, 1318-19 (11th Cir. 2001).
Further, Woods cannot claim that he did not discover the purported
tortious conduct before February of 2016, because he filed an
administrative complaint based on this injury in January of 2013.
Therefore, he knew of the conduct by, at the latest, January 2013.

However, the limitations period may be tolled "where the plaintiff
is prevented from filing a timely cause of action because of some action
of the defendant." *Price v. United States*, 775 F.2d 1491, 1494 (11th Cir.
1985) (citing *Waits v. United States*, 611 F.2d 550 (5th Cir. 1980)). In
*Waits*, the plaintiffs made various efforts to obtain medical records
beginning in July of 1974, but the hospital did not comply with these
requests until October of 1974. The Court held that the action did not
accrue until the plaintiff obtained the records because "[p]rior to that
time, [the plaintiff] knew only that his treatment at the VA Hospital had
been unsuccessful. . . . [D]issatisfaction . . . however, is not to be
equated with knowledge of negligence. . . . To recover damages, the
patient must prove that the disappointing outcome of the surgery
resulted from a breach of care." *Waits*, 611 F.2d at 553. Further, the
Court held that the hospital was to blame for failing to provide the

records in a timely fashion, therefore keeping the plaintiff from discovering and filing the cause of action at an earlier time, and that "no . . . attorney could advise him of the merits of his claim while the facts of the . . . negligence remained lost in inaccessible hospital files." *Id.*[1]

In the case at hand, Woods maintains that he could not file the instant action without the consent form for his December 14, 2012 surgery, because the negligence of the doctors consisted of changing the surgical procedure at the last minute, therefore subjecting him to surgery which he had not consented to. Woods cannot claim that he was not aware of this conduct before he obtained the form, because he filed an administrative claim based on that conduct in January of 2013. (Doc. 19 at 25.) Unlike the Plaintiff in *Waits*, Woods knew exactly what conduct he was basing his legal claim on—he described it in his administrative claim— and therefore did not need this form to present "the facts of the . . . negligence" to an attorney. *Waits*, 611 F.2d at 553.

In *McCullough v. United States*, the plaintiff argued that "he could not have known about the . . . cause [of the injury] until he had

---

[1] *Waits* analyzes the accrual of an action under the first clause of § 2401, and does not mention equitable tolling. However, in *Price*, the Eleventh Circuit interpreted *Waits* as discussing equitable tolling of the limitations period, and this Court will follow that interpretation.

reasonable opportunity to obtain his medical records." 607 F.3d 1355, 1360 (11th Cir. 2010). The court disagreed, holding that "[h]e did not need his medical records to learn the 'critical facts' indicating that he had been hurt and who had inflicted the injury." *Id.* (quoting *United States v. Kubrick*, 444 U.S. 111, 122 (1979)). Even Mr. McCullough's "commendable diligence in requesting his records" did not save him from the statute of limitations because he had the facts he needed to file suit. *Id.* at 1361.

Woods advances that he was unable to successfully maintain legal representation because of USA's affirmative misconduct in refusing to give him his consent form, and in intimidating his attorney. Yet, he fails to show that he needed his medical records in order to file a viable action, as he clearly knew the "critical facts" of his case. He also fails to allege any facts that demonstrate that the alleged "intimidation" of his attorney prevented him from timely filing this action. The only conduct that Woods seems to allege "intimidated" his attorney was statements about the cost of maintaining this action. There is no support in Eleventh Circuit precedent for Woods's argument that a misstatement about the price of litigation—even when it leads to the withdrawal of an attorney— should result in equitable tolling. Therefore, as Woods has shown no

reason why the statue of limitations should be tolled, summary judgment based on the untimeliness of this suit is due to be granted.

## IV. CONCLUSION

For the reasons stated above, summary judgment in USA's favor is due to be GRANTED. A separate order consistent with this opinion will be entered. Further, Plaintiff's Motion to Stay (Doc. 24) is DENIED AS MOOT. A separate order consistent with this opinion will be entered.

**DONE** and **ORDERED** this 9th day of January 2017.

_____
L. Scott Coogler
United States District Judge
186291